IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| TERRANCE YANCY | § | |
| VS. | § | CIVIL ACTION NO. 1:13-CV-90 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Terrance Yancy, an inmate formerly confined at the Federal Correctional Complex in Beaumont, Texas , proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to the Federal Tort Claims Act ("FTCA") against the United States of America. The defendant filed a motion for summary judgment. Plaintiff has had an opportunity to respond to the motion. In addition, both parties have filed additional replies. The matter is now ripe for review.

The above-styled action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

On August 15, 2010, plaintiff was housed at the United States Penitentiary within the Federal Correctional Complex in Beaumont, Texas. During the institution's lock-down hours, at 4:30 a.m., the housing unit correctional officer, Officer Hebert, unlocked plaintiff's cell door and permitted another inmate, Walker, to enter plaintiff's cell in order to receive his early meal in observance of Ramadan. Inmate Walker threw hot water on plaintiff's face, tackled him and proceeded to strike and kick plaintiff in the face. Plaintiff did not retaliate and, according to plaintiff, Officer Hebert stood by and did not intercede. Plaintiff contends he was beat by Walker until Walker was tired and

led away by compound officers waiting at the cell door.

Plaintiff suffered a displaced fracture of the nasal bone which is "markedly misaligned." Plaintiff was provided emergency care but was allegedly not accorded follow-up corrective surgery recommended by the University of Texas Medical Branch ("UTMB"). Plaintiff contends his breathing is impaired due to the sinus cavity damage and the misalignment of his nose.

Plaintiff alleges the Officer Hebert was negligent in opening the door to his cell for the other inmate to deliver food rather then placing the food through the food slot as required by Ramadan procedure during institutional or other lock-down times.

## Defendant's Motion for Summary Judgment

The defendant contends it is entitled to summary judgment because plaintiff cannot succeed in showing that the defendant breached its legal duty to plaintiff or how the federal actor involved was the proximate cause of plaintiff's injuries. Specifically, defendant contends that plaintiff's injuries were not reasonably foreseeable by defendant and that there is no evidence that plaintiff informed staff that his safety would be in jeopardy if he and inmate Walker were in close proximity to one other. Defendants do not argue the discretionary function exception applies in this case, however.

## Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and one party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted). The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof. *Celotex*, 477 U.S. at 322-23; *ContiCommodity Servs., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted). Furthermore, there must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," unsubstantiated assertions, or the presence of a "scintilla of evidence" is not enough to create a real controversy regarding material facts. *See, e.g. Lujan v. National Wildlife Federation*, 497 U.S. 871, 902, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th

Cir. 1994). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Analysis

*Federal Tort Claims Act*

Under the Federal Tort Claims Act, federal inmates held in correctional facilities have the right to sue the United States for personal injuries they sustain as a result of a government employee's negligence. *United States v. Muniz*, 374 U.S. 150, 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976).

Claims for personal injuries caused by negligent acts or omissions of government employees, acting within the scope of their employment, are to be considered by district courts "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see* 28 U.S.C. § 2674; *Hossic v. United States*, 682 F.Supp. 23, 24-25 (M.D. Pa. 1987); *Fleishour v. United States*, 244 F.Supp. 762, 766-767 (N.D. Ill. 1965); *Muniz*, 374 U.S. at 153. "[T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *Muniz*, 374 U.S. at 164-65. Pursuant to 18 U.S.C. § 4042, the United States (through the Bureau of Prisons) has a duty of care to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons convicted of offenses against the United States" and to "provide for the protection of all persons convicted" of such offenses. 18 U.S.C. § 4042. However, the statute does not dictate the manner in which the duty must be fulfilled. *Santana-Rosa v. United States*, 335 F.3d 39, 44 (5th Cir. 2003) (noting that § 4042 does not mandate a specific course of conduct).

Although § 4042 establishes a federal duty of care, courts must still look to state law to determine whether the duty was breached. *See Hannah v. United States*, 2006 WL 2583190 (N.D. Tex. Sept. 1, 2006). Thus, in the present action, the negligence law of Texas applies. *See Hossic*, 682 F.Supp. at 24-25. Under Texas law, a negligence cause of action consists of the following elements: (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages which are proximately caused by the breach of the duty. *IHS Cedars Treatment Center of Desoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Proximate cause consists of foreseeability and cause in fact, which can be described as a substantial factor. *Id*. These elements may not be satisfied by only speculation or conjecture. *Id.* at 798-99; *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Cause in fact is satisfied when it is shown that the act or omission in question was a substantial factor in bringing about the injuries that occurred, and without it, the injuries or harm would not have occurred. *IHS Cedars Treatment Center*, 143 S.W.3d at 700; *Doe*, 907 S.W.2d at 477. The Texas Supreme Court has

> found the Restatement (Second) of Torts to be instructive on this point: [i]n order to be the proximate cause of another's harms, it is not enough that the harm would not have occurred had the actor not been negligent . . . This is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm . . . Accordingly, cause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible.

*IHS Cedars Treatment Center*, 143 S.W.3d at 799 (quoting *Lear Siegler, Inc. v. Travis*, 830 S.W.2d 470, 472 (Tex. 1991)). Additionally, foreseeability involves a practical inquiry into whether the harm that resulted could have been reasonably anticipated or contemplated as a consequence of a defendant's behavior. *Doe*, 907 S.W.2d at 478.

5

*Application*

**1. The Assault**

In the present case, plaintiff argues Officer Hebert did not follow inmate safety directives which resulted in the incident at issue. Specifically, plaintiff quotes from the "Observance of Ramadan Procedure" dated July 19, 2010, which states the following:

> Each morning of the fast, one participant from each housing unit will be released from his cell at 4:30 AM to wake other participants and provide hot water. Compound officers will also be notified at 4:30 AM by Food Service to pick-up milk and distribute it to the units. Housing Unit Officers will be required to open food slots on identified cells for hot water and milk distribution. The inmate will return to his assigned cell before the 5:00 AM count. Ramadan participants will partake of their breakfast meal and pray in their respective cells.

Plaintiff's Original Petition, pg. 5; Exhibit H. According to plaintiff, observance of Ramadan guidelines and lock-down policy do not permit the opening of an inmate's cell door during the night time lock-down hours between 10:00 PM and 6:00 AM. As a result, plaintiff argues Officer Hebert violated published security policies which breached the requisite legal duty owed to him. He states further that the cause in fact element of proximate cause is easily satisfied in this case as the officer's opening of the cell door was a substantial factor in bringing about his injuries. Put another way, according to plaintiff, if the officer had never opened the door as required by protocol, an act that arguably was not discretionary, the incident would never have happened. As to foreseeability, plaintiff argues it is foreseeable that a violent offender in a high security United States penitentiary is likely to commit further violent acts. Plaintiff concludes that negligence is clearly demonstrated

by the facts of his case.[1]

As previously stated, the underlying facts of this case are not in dispute. Defendant confirms plaintiff sustained a closed nasal fracture and a contusion to his right eye from the incident. Defendant's Motion for Summary Judgment, Exhibit B, Declaration of Lee Ann Pollman. In addition, they confirm he received immediate care for his injuries, and, once deemed necessary by UTMB medical staff, he had closed reduction nasal surgery to repair his fractured nose. *Id.* Plaintiff also received numerous follow-up evaluations, without medical staff finding any complications, according to defendant. *Id*. Defendant, however, argues that plaintiff, beyond his conclusory statements, has failed to allege defendant breached its duty of ordinary care or that such a breach was the proximate cause of his injury. Defendant also argues that plaintiff's injuries were not reasonably foreseeable by Defendant as there is no evidence that plaintiff informed staff that his safety would be in jeopardy if he and inmate Walker were in close proximity to one another. Furthermore, defendant argues there is no evidence that the BOP otherwise had knowledge that separation of the two inmates was required.

First, with respect to duty, the defendant argues the mere breach of policy is not negligence. *See Wackenhut Corr. Corp. v. de La Rosa*, 305 S.W.3d 594, 629 (Tex. App. – Corpus Christi 2009, no pet.). The defendant goes on to say that the relevant question is not whether BOP staff followed

---

[1] The underlying facts of this case are not in dispute. In an Incident Report written by Officer Hebert on August 16, 2010, Officer Hebert states: "On August 15, 2010 at 4:30 am I released Inmate Walker from cell 231 to retrieve the hot water for the Ramadan inmates in Unit DA. I opened cell 232 where Inmate Yancy 18993–45 was standing by to receive his hot water as he is a Ramadan inmate. As the cell door opened Inmate Walker proceeded to throw the hot water in Inmate Yancy's face. As Inmate Walker threw the water he charged Inmate Yancy tackling him to the floor inside of cell 232. Inmate Walker was given numerous direct orders to stop and leave which he did not comply with immediately. Inmate Walker then ceased the attack and was taken by the Compound officers out of the unit. As soon as Inmate Walker left cell 232 Inmate Yancy was secured in Cell 232 until additional staff arrived on the scene. Inmate Walker was the aggressor in this incident. Inmate Yancy was passive and did not retaliate. Plaintiff's Original Complaint, Exhibit I, pgs. 1-2. The Incident Report against plaintiff was ultimately expunged as plaintiff did not retaliate. *Id*., Exhibit, pg. 3.

the Ramadan Guidelines precisely, but whether the guidelines were for the purpose of preventing the type of incident that occurred. According to defendant, the FCC Complex Supplement states that the general purpose of lockdown from 10 PM to 5 AM at FCC Beaumont is for the accountability of inmates, not to prevent criminal or tortious acts of third parties. *See* Defendant's Motion for Summary Judgment, Ex. D. Defendant thus argues that the Ramadan guidelines to which plaintiff refers do not change the purpose of the nighttime lockdown but merely provide staff with a means of accommodating inmates so that they may observe Ramadan while maintaining accountability of those inmates during lockdown hours. According to defendant, the Ramadan guidelines do not increase, or change, the duty of ordinary care owed to inmates. *See* Defendant's Motion for Summary Judgment, pgs. 10-11.

Upon review of the FCC Complex Supplement, the court questions whether the general purpose of the lockdown is solely for accountability of the inmates and not to prevent criminal or tortious acts of third parties. In reviewing the program objectives, the supplement states that "[t]he expected results of this supplement are:

a. Staff at the complex will account for all inmates to provide a safe and humane environment for persons committed to federal custody.

b. Inmate movement will be controlled and monitored to ensure the threat of escapes, assaults, or other activities which threaten the security or good order of the institution is minimized.

c. All staff will take a pro-active role to ensure the inmates under their supervision are accounted for at all times during the day.

Exhibit D, pg. 1. Furthermore, the supplement states that at the United States Penitentiary ("USP"), "lockdown for the general inmate population is 9:30 pm for the 10:00 pm count until the 5:00 am count clears. <u>Any inmate movement during general lockdown will be escorted movement only.</u>"

*Id*. pg. 13. The latter stresses the importance of escorted movement which ties into the program objectives of safety and the need to maintain a controlled and monitored environment. Nothing in the FCC Complex Supplement, however, discusses the protocol for serving food while inmates are in lockdown during the evening and defendant did not provide any other policy that addresses this protocol. As it stands, it would appear the Ramadan guidelines, which appear to require the water and milk be served through the food slot, is the controlling policy, and not discretionary, in conjunction with the Supplement that states its objectives are not only to provide an accountability of all inmates but, also, to do so in a safe and humane environment and to ensure the threat of escapes, assaults or other activities which threaten the security or good order of the institution.

Although defendant cites to *Wackenhut Corr. Corp.* for the proposition that mere breach of policy is not negligence, the court notes that the Texas Court of Appeals in that case even noted that this is not a universal theory and actually upheld the application of the policy at issue as the applicable legal standard during a jury trial. 305 S.W.3d 594, at 629. The Texas Court of Appeals for Corpus Christi stated," [n]ext, Wackenhut argues that even if the policy required it to search every inmate, a breach of policy does not prove negligence. As a general proposition, we agree; however, in this case, the crash gate post order embodied the applicable legal standard of care because the order was 'designed to prevent injury to the class of persons to which the injured party belongs.'" *Id*. Based on the foregoing, this court cannot state as a matter of law that breach of a policy never can prove negligence. Furthermore, a fact issue remains regarding the true intent and purpose of the policies at issue.

As to the showing of a breach of the applicable legal duty and proximate cause, defendant cites to a Fifth Circuit case that upheld a district court's determination that prison officials did not

9

breach their duty of care when one inmate was assaulted by another inmate because there was no notice of any problems between the inmates. *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976). Defendant argues that in the present case, as well, Officer Hebert had no notice of any prior problems between the two inmates and thus cannot be held liable for opening the cell door and allowing inmate Walker access to plaintiff which ultimately resulted in injury to plaintiff. First, this court cannot find support for the proposition that prior notice is an absolute in all cases especially where the discretionary function exception is not applicable. Furthermore, this case was a Fifth Circuit case reviewing a bench trial on the determination of negligence under the FTCA and not an order disposing of the issue on summary judgment. Again, this court finds that a fact issue remains as to whether defendant breached the applicable legal duty owed to plaintiff and whether the injury was, in fact, not foreseeable.

The court has reviewed other cases involving the FTCA that were ultimately decided during a bench trial and not resolved on a motion for summary judgment. In *Garza v. United States of America*, 2007 WL 776682 (S.D. Tex. March 9, 2007), the trial court ultimately determine the defendant was liable during a bench trial after the Fifth Circuit reversed the dismissal of an FTCA claim under the discretionary function exception and remanded the case for a full factual determination on the merits regarding any claim based on the failure of the guard to follow the "will patrol" instruction in the Specific Post Orders. The Fifth Circuit reversed the original dismissal because "the 'will patrol' instruction prescribes a set course of action for the post guard [and therefore] the discretionary function exception does not bar a cause of action based on Garza's allegation that Romero failed to patrol the recreational yard." *See Garza v. United States of America*, 161 Fed. App'x 341, 346 (5th Cir. 2005). Also relevant is the theory that has evolved in Texas

jurisprudence that issues related to negligence are not appropriate for determination through summary judgment. *See, e.g., Poehls v. A.L. Turner*, 2002 WL 1995492 (Tex. App. – Austin, Aug. 30, 2002) (not cited for publication) (citing *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 609 (Tex. 1979) ("As a general rule, the determination of negligence is the province of the trier of fact."); *McIntosh v. NationsBank*, 963 S.W.2d 545, 548 n. 10 (Tex. App. – Houston [14th Dist.] 1997, pet. denied) ("[Foreseeability is a factor in determining both proximate cause and duty elements of negligence. Because proximate cause is a fact question whereas duty is a question of law, it would appear that foreseeability is a fact question for purposes of determining proximate cause but a question of law for determining the existence of a duty."). *See also Chess v. United States of America*, 836 F.Supp. 2d 742, 7551-52 (N.D. Illinois Dec. 1, 2011) (quoting *Palay v. United States* 349 F.3d 418, 432-33 (7th Cir. 2003) in the context of summary judgment, "[w]hether or not the defendant's conduct proximately caused the plaintiff's injury ordinarily is a question for the finder of fact to decide; only rarely are the facts so clear that the court can resolve the issue as a matter of law.").

Based on the foregoing, the court finds that there are significant fact issues to be determined regarding the specific duty owed in this case, the breach of that duty and proximate cause that is appropriate for a bench trial. Summary judgment as to plaintiff's negligent failure to protect claim under the FTCA should be denied.

**2. Follow-Up Medical Care**

Plaintiff states he is also suing under the FTCA as BOP staff would not take him to the hospital for recommended follow-up procedures. Plaintiff fails to identify specifically, however, what the follow-up procedure was that was recommended by UTMB and who allegedly with the

BOP failed to take him or refused to allow the procedure. Plaintiff rather appears to argue generally he feels he needs further reconstructive surgery as his "crooked nose is obvious" and does not function properly.

Defendants counter that plaintiff has failed to provide any evidence that medical providers have determined that plaintiff is in need of additional medical care resulting from the assault. The court notes that plaintiff has not countered with any evidence to substantiate his claim that UTMB actually recommended further surgery which BOP staff allegedly declined to approve or failed to make arrangements for him to receive the procedure. Furthermore, a review of the medical records provided by defendants confirms plaintiff did receive corrective surgery and that the surgery was successful. Defendant's Motion for Summary Judgment, Exhibit B, Declaration of Lee Ann Pollman. The medical records are also devoid of any opinion stating that plaintiff could not breathe within "medical normal limits" or that he needed additional surgery. *Id*.

First, a prisoner's disagreement with his medical treatment is not actionable. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Furthermore, as previously stated, plaintiff has failed to identify specifically what doctor made a recommendation for further surgery, what the surgery entailed, and who at the BOP failed to take him or refused the follow-up procedure. There must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," unsubstantiated assertions, or the presence of a "scintilla of evidence" is not enough to create a real controversy regarding material facts. *See, e.g. Lujan v. National Wildlife Federation*, 497 U.S. 871, 902, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary

facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This claim, therefore, should be denied.

To the extent plaintiff asserts a medical malpractice claim against staff at the BOP or with employees at UTMB, plaintiff makes no attempt, by expert evidence or otherwise, to meet his burden by asserting or providing evidence of the degree of care expected of a health care provider or ordinary prudence and skill, practicing in the relevant community. Under Texas law, expert testimony is generally required to prove the applicable standard of care in a medical malpractice claim under the FTCA. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003); *Dubose v. Worker's Medical, P.A.*, 117 S.W.3d 916, 919 (Tex. App. – Houston [14th Dist.] 2003, no pet.) (citing *Preble v. Young*, 999 S.W.2d 153, 155 (Tex. App. – Houston -14th Dist.] 1999, no pet.). Plaintiff has provided no evidence to establish this standard of care. Finally, any claim asserted by plaintiff for medical malpractice against the United States for actions or inactions taken by employees of UTMB must also fail. Defendants confirm that all medical care at the Federal Correctional Complex in Beaumont is provided by UTMB, an independent contractor, and plaintiff has not argued to the contrary. *See, e.g.*, Defendant's Motion for Summary Judgment, Ex. F, Declaration of Dennis Sherrill; Plaintiff's Response; *see also United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) (the United States is not responsible for the torts committed by a government contractor); *LeSuer v. United States*, 617 F.2d 1197 (5th Cir. 1980) (the United States may not be held liable for the torts of employees of its independent contractors). In fact, in his reply to Defendant's Motion to Dismiss or Motion for Summary Judgment, plaintiff confirms he was not making any such claims against employees of UTMB. *See* Response, pg. 6.

<u>Recommendation</u>

Defendant's motion for summary judgment as to plaintiff's negligent failure to protect claim under the FTCA should be denied. Defendant's motion for summary judgment as to plaintiff's claim for negligent medical care under the FTCA should be granted.

<u>Objections</u>

Within fourteen (14) days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED** this ___18___ day of _____February_____, 2014.

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE